UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF THE SHEET METAL
WORKERS' LOCAL UNION NO. 80
PENSION TRUST FUND,                                   Case Number: 07-15268
                                                      Honorable David M. Lawson
                    Plaintiff,

v.

W.G. HEATING & COOLING,

                    Defendant.
_____/

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE COUNTERCLAIM, GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION TO STRIKE THIRD-PARTY COMPLAINT

This matter is before the Court on three motions filed by the plaintiff in this action to collect payments allegedly owed by the defendant for "withdrawal liability" under the Multiemployer Pension Plan Amendments Act (MPPAA), 29 U.S.C. §§ 1381-1453, which amended portions of the Employee Retirement Income Security Act of 1974 (ERISA) to increase the financial liability of employers who withdraw from underfunded employee benefit plans. The defendant entered into a collective bargaining agreement (CBA) with Sheet Metal Workers International Association, Local 80 in 1982, pursuant to which the defendant assumed the obligation to remit fringe benefit contributions. In April 2006, the defendant's employees voted to decertify Local 80 as their exclusive bargaining representative, and therefore W.G. Heating ceased to be a signatory to a CBA with the union. In its complaint, the plaintiff alleges that the defendant is subject to withdrawal liability under ERISA section 4201(a), 29 U.S.C. § 1381, because its employees continue to perform work of the type for which contributions to the fund were required previously. The defendant has filed a counterclaim contending that the plaintiff breached its fiduciary duties in managing the fund

by committing waste and misrepresenting the possibility of withdrawal liability. The defendant also filed a third-party complaint against Local 80 alleging fraud and misrepresentation on the theory that the union represented a certain amount of fringe benefit contributions would be required, but said nothing about the possibility of withdrawal liability in the event the fringe benefit funds were determined to be underfunded.

The plaintiff now moves for dismissal of the counterclaim and third-party complaint, as well as for summary judgment on its complaint. The plaintiff contends the Court lacks subject-matter jurisdiction over the defendant's claims, and the defendant has not presented viable defenses to the plaintiff's claims, to which there is no factual dispute. The defendant vigorously contests each of these points in its response brief. The Court has reviewed the submissions of the parties and finds that the relevant law and facts have been set forth in the motion papers and that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *See* E.D. Mich. LR 7.1(e)(2). The Court finds that it has no subject matter jurisdiction to entertain the counterclaim; the third-party claim is a proper action for indemnity under Federal Rule of Civil Procedure 14(a) over which the Court has jurisdiction; and the defendant's failure to demand arbitration of the claim for withdrawal liability payments or otherwise to plead a viable defense justifies judgment in the plaintiff's favor as a matter of law. Therefore, the Court will grant the plaintiff's motion to dismiss the counterclaim, deny the plaintiff's motion to strike the third-party complaint, and grant the plaintiff's motion for summary judgment.

# I.

The plaintiff filed its complaint on December 11, 2007 under ERISA to collect employer withdrawal liability payments. "Withdrawal liability" is a creature of statute, and it can arise when an employer participates in and then withdraws from a multi-employer benefit plan through a collective bargaining agreement. "An employer's withdrawal liability is its proportionate share of the plan's unfunded vested benefits, that is, the difference between the present value of vested benefits (benefits that are currently being paid to retirees and that will be paid in the future to covered employees who have already completed some specified period of service, 29 U.S.C. § 1053) and the current value of the plan's assets." *Concrete Pipe and Prods. of California, Inc. v. Construction Laborers*, 508 U.S. 602, 609 (1993) (citing 29 U.S.C. §§ 1381, 1391) (internal quotations omitted).

As soon as practicable after an employer withdraws from a multi-employer plan by, say, discontinuing participation in a CBA, the ERISA plan trustees must notify the employer of its withdrawal liability and the schedule for payment. 29 U.S.C. § 1399(b)(1). If the trustees do not satisfy these requirements, collection is precluded. *Canario v. Lidelco., Inc.*, 782 F. Supp. 749 (E.D.N.Y. 1992). Disputes over the amount of withdrawal liability are generally subject to arbitration. 29 U.S.C. § 1401(a)(1). If an employer does not satisfy its withdrawal liability, the trustees may bring suit to collect the deficiency in federal court, just as they may for collection of a delinquent fringe benefit contribution. *See* 29 U.S.C. §§ 1451(a)(1), (b) ("In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution.").

The basic facts that give rise to the plaintiff's claim for withdrawal liability in this case generally are not disputed. In 1982, W.G. Heating entered into a collective bargaining agreement with Local 80 pursuant to the Labor-Management Relations Act of 1947. Under the CBA, W.G. Heating paid fringe benefit contributions to a multi-employer fund managed by the plaintiff in this case. W.G. Heating's relationship with Local 80 continued to April 28, 2006, when W.G. Heating's employees voted to discontinue the company's status as a signatory to the CBA. On February 8, 2007, the defendant completed a "Withdrawal Liability Questionnaire" at the plaintiff's request. Among other things, the questionnaire asked the defendant to describe its business operations. The defendant indicated that its primary service was installation of heating and cooling systems in residential construction projects. This response, according to the plaintiff, shows that the defendant's employees continue to perform work that previously was covered by the CBA with Local 80. Therefore, the plaintiff reasons, a "withdrawal" occurred within the meaning of ERISA, subjecting the defendant to withdrawal liability.

On May 2, 2007, the plaintiff sent the defendant a "Notice of Assessment of Employer Withdrawal Liability." As it turns out, the information contained in that notice was erroneous, which all parties concede. The Notice recited a total liability of $32,579; it demanded quarterly installment payments of $8,288 with the first installment due 60 days after receipt of the notice. The defendant received the notice on May 3, 2007.

Because of the error, the plaintiff sent a revised notice on June 29, 2007. Although the revised notice specified a lesser total liability ($30,598), it called for the same periodic installment payments of $8,288 "with the first assessment due 60 days after receipt of the Notice *dated May 2, 2007*." Martin Aff. at ¶ 5 (emphasis added). The defendant received the revised notice on July 2,

2007, the date which the plaintiff says was the final day for payment of the first installment. Thereafter, on July 6, 2007, the plaintiff sent the defendant a "Notice of Overdue Payment." The notice informed the defendant that interest would begin to accrue and demanded immediate payment.

The defendant first inquired about the basis for the withdrawal liability in a letter dated July 20, 2007 sent by its attorney, Steven A. Wright. Wright objected to the assessment on the grounds that the plaintiff had "not provided sufficient information to W.G. Heating for it to determine the accuracy of the Fund's determination of withdrawal liability." Br. in Supp., Ex. B, Wright Letter at 1. Wright requested "that the plan sponsor review and explain precisely how W.G. Heating's liability was determined," *ibid.*, in accordance with 29 U.S.C. § 1399(b)(2)(A)(I). He further stated that W.G. Heating wished to audit the fund's records "to determine (1) the actuarial present value of vested benefit obligations, (2) the value of the plan's assets, (3) the value of the plan's vested but unfunded benefits, and (4) W.G. Heating's proportionate share of unfunded vested benefits." *Ibid.*

The plaintiff responded by letter dated August 10, 2007, enclosing the following documents: (1) the relevant pension plans and amendments; (2) a portion of the "Actuarial Valuation Report for the Plan Year Commencing June 1, 2005"; and (3) the "Allocation of Unfunded Vested Benefits for W.G. Heating & Cooling Inc." Br. in Supp., Ex. C, Pl.'s August 10, 2007 Response at 1-2. The plaintiff refused to furnish records concerning other employers who withdrew.

Defense counsel was not satisfied, and on August 27, 2007, Wright wrote the plaintiff requesting additional information. Counsel requested the entire Actuarial Valuation Report for 2005 (only one page had been sent); the underlying documents used to create the single-page summary styled "Allocation of Unfunded Vested Benefits for W.G. Heating & Cooling Inc"; and information

relating to withdrawal liability of other employers. Wright deemed this information necessary to calculate W.G. Heating's liability. Counsel warned, "If we do not resolve these matters to our satisfaction by October 1, 2007, we will institute arbitration and/or seek injunctive relief in federal court." Br. in Supp., Ex. D, Wright Letter dated August 27, 2007 at 2.

The plaintiff responded to this letter with mailings on September 25 and October 8, 2007. In their September 25 correspondence, the plaintiff furnished the full Actuarial Valuation Report for 2005 and stated, "We will respond to your other requests for information in a separate letter." Br. in Supp., Ex. E, Pl.'s Sept. 25, 2007 Response. However, in the "separate letter," the plaintiff explained that it would not produce the "underlying documentation" for the "Allocation of Unfunded Vested Benefits" summary. Br. in Supp., Ex. F, Pl.'s Oct. 8, 2007 Response at 1. The plaintiff stated that it was not required to produce this information because the defendant's request was not "specific and precise" and the information was not related to variables used in the "presumptive method" for allocating unfunded vested benefits. The plaintiff also refused (once again) to produce information regarding withdrawal liability of other employers, arguing that this information was not relevant to the validity of the defendant's withdrawal liability.

The defendant believes that the promise of a response in the "separate letter" was a bit of intentional misdirection to mislead the defendant into believing that a resolution without arbitration could be worked out. But time passed, and no payments were made. On November 14, 2007, the plaintiff sent the defendant a "Notice of Default and Acceleration of Liability." The determination of default was premised on ERISA's timing provisions and the plaintiff's continued assertion that the initial (erroneous) notice of withdrawal liability (dated May 2, 2007) started the clock, which the defendant fiercely contests. According to the plaintiff's calculation, default was triggered after

ninety days elapsed with no payments made and no arbitration being sought, that is, on November 5, 2007. Including interest, the plaintiff asserted that the defendant owed $31,225.00, which sum was immediately due in full.

The defendant has still not made any payments, nor has it demanded review or arbitration. The defendant takes the position that the arbitration deadline was December 26, 2007. It believes that the plaintiff's action of starting this lawsuit, which occurred on December 11, 2007, waives ERISA's arbitration requirement.

After the plaintiff filed its complaint, the defendant filed a counterclaim and a third-party complaint against Local 80. Both filings advance the theory that because the plaintiff trustees did not inform the defendant of the possibility of withdrawal liability and the trustees and union mismanaged fund assets and committed waste, an obligation to the defendant was created. The defendant's allegations in these pleadings are sparse and largely conclusory, probably because the defendant has not received all the documents it requested from the plaintiff. The defendant seeks damages from Local 80 and the trustees, and requests an order authorizing an audit of the trustees' books and records.

The plaintiff filed its motions despite the lack of much formal discovery. The plaintiff contends that discovery is not necessary, which is the source of another disagreement with the defendant.

## II.

The plaintiff first asks the Court to dismiss the counterclaim pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. The fund argues that the Court lacks subject matter jurisdiction or, in the alternative, the defendant has failed to state a claim. It contends that

the Court lacks jurisdiction over the defendant's counterclaim because the defendant, as an employer, is not included among those authorized by the statute to complain about a breach of fiduciary duty by a plan trustee. The plan contends that the defendant fails to state a claim for the same reason.

The defendant argues that ERISA section 4301, 29 U.S.C. § 1451, expressly authorizes an employer that is adversely affected by the acts or omissions of any party to bring a civil action; therefore the Court has jurisdiction over the defendant's counterclaim alleging mismanagement of fund assets that produced the shortfall on which the plaintiff's withdrawal-liability claim is predicated. The defendant also argues that federal common law supports the counterclaim.

Rule 12(b)(1) authorizes dismissal where subject matter jurisdiction is wanting. Lack of subject matter jurisdiction may be asserted at any time, either in a pleading or a motion. Fed. R. Civ. P. 12(b)(1); *Television Reception Corp. v. Dunbar*, 426 F.2d 174, 177 (6th Cir. 1970). When subject matter jurisdiction is challenged, the plaintiff (or the defendant in the case of a counterclaim) has the burden of proving jurisdiction in order to survive the motion. *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n., Inc.*, 287 F.3d 568, 573 (6th Cir. 2002); *see also Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Rule 12(b)(6) allows for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to allow a counter-defendant to test whether, as a matter of law, the counter-plaintiff is entitled to legal relief even if everything alleged in the counterclaim is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, the Court must construe the counterclaim in the light most favorable to the counter-plaintiff, accept all factual allegations as true, and determine whether the

counterclaim contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S., __, 127 S.Ct. 1955, 1974 (2007). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Ibid.* Federal Rule of Civil Procedure 8(a) requires that the complaint give the defendant fair notice of the nature of the claim and the factual grounds upon which it rests. *Twombly*, 127 S. Ct. at 1964. Therefore, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted) (alteration in original). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (1984)); *see also Ana Leon T. v. Fed. Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review). Of course, these pleading rules apply to counterclaims as well as "complaints."

The Court believes that the plaintiff's motion to dismiss is more accurately addressed under Rule 12(b)(6) rather than Rule 12(b)(1). In alleging lack of subject matter jurisdiction, the plaintiff challenges the Court's authority to adjudicate the merits of the claim. There can be no doubt, however, that federal courts have authority to adjudicate disputes arising under ERISA. *See, e.g.*, 29 U.S.C. § 1132(e). In fact, "Congress has provided district courts with subject-matter jurisdiction

over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 518 (6th Cir. 2006) (quoting 28 U.S.C. § 1331). In *Primax*, the Sixth Circuit explained:

> In two very recent decisions, the Supreme Court has admonished courts to use the term "jurisdiction" with more precision, describing the term as "a word of many, too many, meanings," *Kontrick v. Ryan*, 540 U.S. 443, 453 (2004) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998)). In *Kontrick*, a unanimous Court held that time requirements of Federal Rules of Bankruptcy Procedure 4004 and 9006 did not implicate subject-matter jurisdiction, but were instead "claim-processing rules." *Id.* at 455. Just over one year later, in *Eberhart v. United States*, 546 U.S. 12 (2005) (per curiam), the Supreme Court similarly described Federal Rule of Criminal Procedure 33 with its time limitations as a nonjurisdictional "claim-processing rule." "Clarity would be facilitated," the Supreme Court remarked, "if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Id.* at 405 (quoting *Kontrick*, 540 U.S. at 455). "Characteristically, a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct . . . ." *Kontrick*, 540 U.S. at 456.

*Id.* at 518-19. *See also Long v. Adams*, 411 F. Supp. 2d 701, 708 (E.D. Mich. 2006) (observing that "the fact that a complaint may not state a claim upon which relief can be granted is of no relevance to the question of subject matter jurisdiction") (quoting *Cherokee Exp., Inc. v. Cherokee Exp., Inc.*, 924 F.2d 603, 609 (6th Cir.1991) (internal quotes and citation omitted)). Because the plaintiff is challenging the defendant's ability to proceed on its counterclaim, as opposed to the Court's authority to adjudicate it, the Court rejects the contention that subject-matter jurisdiction is lacking. The Court will determine instead whether the defendant has stated a viable claim for relief in its counterclaim.

The counterclaim in this case plainly and simply alleges that the plan "[t]rustees have breached their fiduciary duties owed to W.G. Heating by failing to establish proper levels of funding for the Fund, as well as the mismanagement, waste, and misappropriation of Fund's assets."

Counterclm. at ¶ 12.  The parties agree that ERISA imposes various fiduciary duties upon plan administrators.  According to ERISA section 404,

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a)(1).  ERISA further provides that a fiduciary who breaches these duties "shall be personally liable" for the losses.  29 U.S.C. § 1109(a).

However, 29 U.S.C. § 1132, ERISA's civil enforcement provision, limits those who can proceed on such a claim to the Secretary of Labor, a participant, a beneficiary, or a fiduciary; only those individuals may seek relief under 29 U.S.C. § 1109.  29 U.S.C. § 1132(a)(2).  The Act defines none of those individuals broadly enough to include employers.  "'[P]articipant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit."  29 U.S.C. § 1002(7).  "The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).  "Employer," which is a defined term in the Act, but is not included in the list of individuals authorized to bring

actions under section 1109, "means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). An employer can also qualify as an ERISA plan fiduciary, but only "to the extent" that it exercises authority, control, or responsibility with respect to the plan or its assets. 29 U.S.C. § 1002(21)(A).

The Sixth Circuit has held that an employer acting in its capacity as such has no authority under ERISA to sue a plan fiduciary for breach of a fiduciary duty. *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101 (6th Cir. 1983). In *Great Lakes Steel*, an employer that administered an ERISA health benefits program sued for a judgment declaring that ERISA barred a state-court action seeking changes in disability benefits. The district court dismissed the case for want of subject matter jurisdiction, reasoning that the employer was chiefly acting as an employer rather than as a fiduciary. The court of appeals affirmed in part and reversed in part, finding that, although ERISA's civil enforcement provision "confers no standing to an employer as employer administering an employee health benefit plan seeking the remedies provided by that subsection," the district court failed to realize that the employer had sufficiently pleaded fiduciary status as well, and inseparability of these roles "does not destroy subject matter jurisdiction." *Id.* at 1105.

The holding of *Great Lakes Steel* is that an employer must qualify as a fiduciary in order to bring an action under 29 U.S.C. § 1132(a). Although the defendant is correct that *Great Lakes Steel* concerned an action under 29 U.S.C. § 1132(a)(3) (which authorizes actions to enjoin practices and to secure other equitable relief, such as a declaratory judgment), that distinction is of no consequence. Like section 1132(a)(3), section 1132(a)(2) (authorizing actions for breach of fiduciary duty) fails to include employers *qua* employers among those authorized to seek relief. The

only way an employer can sue for breach of fiduciary duty (or for a declaratory judgment) is by establishing that it is also a fiduciary or otherwise acting in a fiduciary capacity. *See* 29 U.S.C. § 1002(21)(A); *Great Lakes*, 716 F.3d at 1104-05. Unlike the employer in *Great Lakes*, however, the defendant in this case had no role in the administration of the ERISA plan; it has not claimed a fiduciary capacity and has no colorable basis to do so. This rule has been applied consistently by the Sixth Circuit. *See DeMarco v. C & L Masonry, Inc.*, 891 F.2d 1236, 1241 (6th Cir. 1989) ("[A]n Employer does not have standing to sue a Trustee for a breach of a fiduciary duty owed to the beneficiaries of the plan.")

As noted above, however, the defendant points to another statute, 29 U.S.C. § 1451, as conferring authority to bring its counterclaim, suggesting that the rule changes when a *multiemployer* plan is involved. That statute, which deals with actions in the multiemployer, withdrawal liability context, states:

> A plan fiduciary, *employer*, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle [concerning withdrawal liability] with respect to a multiemployer plan, or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring an action for appropriate legal or equitable relief, or both.

29 U.S.C. § 1451(a)(1) (emphasis added).

The Sixth Circuit has not dealt with that statute in the present context. However, the Third Circuit has suggested that this statute cannot be used to pre-empt the rule that a plan fiduciary cannot be sued by an employer *qua* employer for breach of a fiduciary duty. *See Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters and Employers Pension Fund*, 847 F.2d 113 (3d Cir. 1988). In *Colteryahn*, an employer sued a plan fiduciary on the theory that it was fraudulently induced to accede to a merger between its multiemployer fund and another plan, and therefore it should not be

saddled with withdrawal liability when it withdrew as a contributing employer. The district court dismissed the claim. On appeal, the fund defended the district court's decision by arguing "that the fraud claim is really a claim for breach of fiduciary duty under 29 U.S.C. § 1132 which Colteryahn has no standing to bring." *Id.* at 115. The appellate court disagreed, but not because it found statutory authorization for an employer to sue a plan trustee for breach of a fiduciary duty. The court explained:

> Colteryahn relies on 29 U.S.C. § 1451, which creates federal jurisdiction over MPPAA disputes. The Fund, however, contends that Colteryahn's challenge is merely a thinly-disguised ERISA breach of fiduciary duty claim, and that Colteryahn, as an employer, cannot bring such a claim because only a participant, beneficiary, fiduciary, or the Secretary of Labor has standing to bring an ERISA breach of fiduciary duty suit. . . . The Fund's legal proposition is correct. However, we agree with Colteryahn that it has not attempted to assert a breach of fiduciary duty claim.
>
> Fiduciary duties under ERISA, as a general rule, are owed to participants and beneficiaries only. . . . Colteryahn, however, has not alleged that the defendants acted contrary to the best interests of the participants or beneficiaries, in violation of such a duty. Rather, Colteryahn has alleged fraud and misrepresentation causing Colteryahn itself to suffer an injury that is separate and distinct from any possible injury to others. There is no claim that the Fund acted in breach of a statutory fiduciary duty to act in the best interests of Colteryahn, nor could there be one, because the Fund had no such duty. Thus we reject the Fund's attempt to characterize Colteryahn's suit as a breach of fiduciary duty suit under § 1132.

*Id.* at 119.

Unlike the employer in *Colteryahn*, W.G. Heating has not alleged fraud and misrepresentation by the plan trustees; it has alleged *only* that they breached their fiduciary duties to the defendant. Had that been the case in *Colteryahn*, it is apparent to this Court that the Third Circuit would not have permitted the employer to proceed, and it is equally plain that the Sixth Circuit would not do so either. The Sixth Circuit's unequivocal statement in *DeMarco v. C & L Masonry, Inc.*, 891 F.2d at 1241, – "an Employer does not have standing to sue a Trustee for a

-14-

breach of a fiduciary duty owed to the beneficiaries of the plan" – was made in the context of a multiemployer plan, so 29 U.S.C. § 1451 cannot be used to escape this result.

In addition, W.G. Heating has made no effort to submit this claim to arbitration. The MPPAA contains a requirement that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 [i.e., a withdrawal liability determination] of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). The Sixth Circuit has stated that under the MPPAA, "arbitration reigns supreme." *Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 852 F.2d 156, 164 (6th Cir. 1988) (internal quotation marks omitted). "[A]rbitration is the appropriate forum if there is a dispute concerning whether the employer has completely or partially withdrawn from the pension fund, and, if so, the amount of liability. The same is true for the date an employer withdraws from the pension fund." *Ibid.* (internal citations omitted). Further, "questions of statutory construction, standing alone, are not exempt from arbitration under the MPPAA." *Ibid.* Although there are exceptions to the arbitration requirement – instances where an employer mounts a facial constitutional attack; makes a verifiable claim of irreparable injury; or raises the issue of whether it is an "employer" within the meaning of ERISA section 4221(a), *id.* at 165 – the defendant's counterclaim falls in none of these categories. Because the defendant seeks to contest the amount of its withdrawal liability by challenging the plan fiduciary's performance, it should have initiated its complaint in accordance with 29 U.S.C. § 1401(a) in an arbitral forum.

Finally, there is an additional reason the defendant's counterclaim is subject to dismissal for failure to state a claim under Rule 12(b)(6). As the court observed in *Colteryahn*, 847 F.2d at 113, and 29 U.S.C. § 1104(a)(1) makes clear ("a fiduciary shall discharge his duties with respect to a plan

solely in the interest of the participants and beneficiaries"), plan administrators do not owe fiduciary duties to employers, only to participants and beneficiaries. The plaintiff, therefore, cannot be liable to the defendant employer for breaching a fiduciary duty.

For these reasons, the plaintiff's motion to dismiss the counterclaim for failure to state a claim must be granted.

### III.

The plaintiff also has moved to dismiss the defendant's third-party complaint against Local 80 on the grounds that the pleading is not a proper action over as contemplated by Federal Rule of Civil Procedure 14(a) and because the issues of fraud and misrepresentation are not addressed properly in an ERISA collection proceeding. The defendant contests these arguments, asserting that it does not intend to use Local 80's alleged misrepresentation as a defense to the plaintiff's collection case. Rather, it asserts a right to indemnity for any withdrawal liability it might be found to owe the plaintiff.

Rule 14(a) permits a defending party to implead another "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed R. Civ. P. 14(a). In *Bank of India v. Trendy Sportswear, Inc.*, 239 F.3d 428 (2d Cir. 2000), the Second Circuit discussed what it takes to sustain an impleader case. The court explained:

> To sustain an impleader action, the third-party defendant . . . "must be liable secondarily to the original defendant, or . . . the third party . . . must necessarily be liable over to the defendant . . . for all or part of the plaintiff's . . . recovery, or that the defendant . . . must attempt to pass on to the third party . . . all or part of the liability asserted against the defendant . . . ." [*Int'l Paving Sys., Inc. v.*] *Van-Tulco*, 866 F. Supp. [682, ]686 [(E.D.N.Y. 1994)] (internal quotation marks omitted); Wright, Miller & Kane, Federal Practice and Procedure § 1446 (1990); *see also Telecom International*, 1999 WL 777954, at *4. This means that the impleader action must be dependent on, or derivative of, the main . . . claim.

*Id.* at 438. "The purpose of Rule 14 is to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *American Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 804 (6th Cir. 2008). *See also* Wright & Miller, Federal Practice and Procedure § 1446 ("The secondary or derivative liability notion is central [to a Rule 14(a) impleader] and it is irrelevant whether the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory.").

At its core, then, impleader is appropriate when the impleaded party may be liable to the defendant if the plaintiff is successful in its claim. Derivative liability is therefore the driving concept behind impleader. In this case, impleader is appropriate due to the relationship between the principal complaint and the third-party complaint. In the principal complaint, the plaintiff seeks to collect withdrawal liability. In the third-party complaint, the defendant states that Local 80 committed fraud and misrepresentation by failing to inform the defendant of the possibility of withdrawal liability. The defendant asserts that it has been harmed by Local 80's conduct by virtue of the withdrawal liability action. The defendant explains, "W.G. has suffered injury and damages as a result of its reliance upon Local 80's false material representation, including its attorney's fees to defend in this matter, as well as any withdrawal liability that may be awarded to Plaintiff in this matter." Third-Party Compl. at ¶ 19. Moreover, the relief sought by the defendant consists of "all damages incurred by W.G. as a result of Local 80's fraud and misrepresentation, including its attorney's fees and any monies that [are] awarded to Plaintiff in this matter." *Id.* at 4. This is essentially a request for indemnification, and the harm alleged is only made real if the plaintiff

succeeds in its case for withdrawal liability. Therefore, the Court must reject the plaintiff's argument that the third-party complaint fails to comply with Rule 14(a).

In addition, Sixth Circuit precedent supports the propriety of an employer's third-party complaint against a union for indemnity based on fraud or misrepresentation in a case for collection of fringe benefit contributions, according to *Northwestern Ohio Admin., Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018 (6th Cir. 2001), whose facts parallel those in the present matter. That case started as a routine collection-of-fringe-benefits action brought by a non-profit company administering ERISA benefit plans. Defendant Walcher & Fox, an employer in the construction business, had signed certain project agreements with a union local that included an obligation to pay the fringe benefits. There was a fact dispute with the plan administrator over the scope of the agreements and the workers it included. However, Walcher & Fox also contended that the union and its official fraudulently misrepresented the scope of the project agreements and therefore they were liable to the employer for the amount of fringe benefits sought by the plan administrator. The employer therefore filed a third-party complaint against the union and its representative for contribution and indemnity based on the alleged fraud. The Sixth Circuit affirmed the district court's refusal to dismiss the third-party complaint, concluding that the court had supplemental jurisdiction over the dispute with the union, and the employer's state-law claim for fraud in the inducement was not preempted by federal law. *See id.* at 1026-31. Among other things, the court ruled that the third-party complaint was not subject to dismissal under *Textron Lycoming Reciprocating Engine Div. AVCO Corp. v. U.A.W.*, 523 U.S. 653, 656 (1998), which held that section 301(a) of the LMRA "confers federal subject-matter jurisdiction only over '[s]uits for violation of contracts.'" The Sixth Circuit acknowledged the difference between suits that claim a contract is invalid and suits that

claim a contract has been violated, but stated that the plaintiffs made too much of this. The court explained:

> The Union and Helldobler have missed the point. While W & F has indeed asked for a determination that the Project Agreements are void or voidable, it has also asked for judgment against the Union and Helldobler for indemnification and damages in the event W & F is found liable to NOA for the additional contributions – liability that W & F claims arose only because of the Third-Party Defendants' fraud and misrepresentation. The third-party complaint does not present a *Textron* situation, and it is immaterial that the fraud and misrepresentation claims are not cognizable under section 301. Those claims are clearly within the supplemental jurisdiction of the federal court as spelled out in 28 U.S.C. § 1367(a).

*Walcher & Fox*, 270 F.3d at 1026.

And so it is in the present case. W.G. Heating seeks indemnification from Local 80 for the fringe benefit payments the plaintiff claims are due as a result of withdrawal liability. The fraud claim arises from the same circumstances that give rise to the plaintiff's contention that W.G. Heating must account for its statutory withdrawal obligations. The defendant's third-party complaint asserting fraud and misrepresentation against Local 80 therefore is cognizable and within this Court's supplemental jurisdiction. Although fraudulent inducement may not normally be a defense to ERISA collection actions of this sort, *see Southwest Admin., Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1996), that rule does not preclude a third-party complaint seeking indemnification on such a theory. There is no material difference between this matter and *Walker & Fox*.

Finally, the third-party complaint is not subject to arbitration under ERISA's provisions because it is not a "dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination" as to withdrawal liability. 29 U.S.C. § 1401(a). Local 80 is not the plan sponsor. Therefore, the motion to strike the third-party complaint will be denied.

IV.

Finally, the plaintiff moves for summary judgment on its principal claim against the defendant for collection of the withdrawal liability amount. The plaintiff maintains it is entitled to judgment because the undisputed facts show that the defendant withdrew from the fund, it received proper notice of the assessment of withdrawal liability, and it failed to seek arbitration within the permitted time. Therefore, the plaintiff argues, it is entitled to judgment since the defendant is now precluded from challenging the amount of withdrawal liability. The defendant, however, insists that the summary judgment motion is premature because it never received the information to which it was entitled within the window for demanding arbitration, and it has not been able to gather that information in the short time that discovery has been open in this case, especially with respect to its counterclaim alleging that waste and mismanagement precludes any amount of withdrawal liability. The defendant believes that the plaintiff waived the arbitration requirement of the statute by filing the lawsuit before the time to arbitrate expired. The plaintiff counters that the defendant has the timing wrong on the arbitration deadline. So the plaintiff's summary judgment motion requires resolution of two issues: (1) whether the motion (and the lawsuit itself) is premature; and (2) whether the defendant is barred from disputing withdrawal liability by failing to seek arbitration.

A motion for summary judgment under Fed. R. Civ. P. 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an

integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). Thus a factual dispute which "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993); *see also Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

The resolution of the first issue – whether the summary judgment motion is premature – necessarily requires resolution of the second, since discovery would not matter if the defendant's failure to demand arbitration precludes assertion of its defenses. "The general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Vance by and through Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1998). But a party "complaining that the district court granted summary judgment without allowing adequate discovery

must be able to show that he could have obtained information through discovery that would disclose material facts. Nebulous assertions that more discovery time would have produced evidence to defeat summary judgment will be unavailing." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) (internal citation omitted). The defendant says that it is too early to pass on summary judgment because the plaintiff's claim will be defeated if it prevails on its counterclaim, and its counterclaim cannot be assessed until the defendant has had an opportunity to examine the fund's papers to determine whether waste or mismanagement occurred. However, since the counterclaim will be dismissed, these arguments are unavailing. Certainly, discovery of the sort sought by the defendant may be needed on the third-party complaint against Local 80, but since that is an action for indemnification, it does not preclude summary judgment in favor of the plaintiff.

The Court concludes that there are no material fact disputes surrounding the issues raised by the complaint. The parties do not contest the timing of the events that led to the commencement of this action. They only disagree as to the operation of the statutory deadlines and the legal consequences that flow therefrom. Summary judgment under Rule 56 is a particularly apt method of addressing an issue when the fact questions are settled and "the sole question at issue [is] a question of law." *United States v. Donovan*, 348 F.3d 509, 511 (6th Cir. 2003); *see also Wachovia Bank v. Watters*, 431 F.3d 556, 559 (6th Cir. 2005); *Progressive Corp. and Subsidiaries v. United States*, 970 F.2d 188, 190-91 (6th Cir. 1992).

In its pleadings, the defendant contests the plaintiff's collection demand by denying that the amount demanded is an accurate amount (primarily because the plaintiff was not forthcoming with requested documentation), by denying that it has incurred any withdrawal liability at all, by contending that the plaintiff mismanaged the fund, and by asserting that the plaintiff failed to give

proper notice of the obligation due.  Should the defendant first have presented these arguments in arbitration, and if so, did the plaintiff waive that requirement by filing its complaint when it did?

The MPPAA sets forth a detailed procedure that speaks to these questions.  The statute provides that a plan fiduciary must send a notice of withdrawal liability and a demand for payment "[a]s soon as practicable" after an employer withdraws from a multiemployer plan.  29 U.S.C. § 1399(b)(1).  The employer then has 90 days to ask the plan sponsor to "review any specific matter relating to the determination of the employer's liability," after which the sponsor must notify the employer of its decision "[a]fter a reasonable review of any matter raised."  29 U.S.C. § 1399(b)(2)(A), (B).  If disputes remain, or if the plan sponsor fails to respond to the request for review, the Act sets forth the procedure that must be followed:

> (a) Arbitration proceedings; matters subject to arbitration, procedures applicable, etc.
> (1) Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 [i.e., a withdrawal liability determination] of this title *shall* be resolved through arbitration. *Either party may initiate the arbitration proceeding* within a 60-day period after the earlier of –
>
> (A) the date of notification to the employer under section 1399(b)(2)(B) of this title, or
>
> (B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title.
>
> The parties may jointly initiate arbitration within the 180-day period after the date of the plan sponsor's demand under section 1399(b)(1) of this title.
> . . .
>
> (b) Alternative collection proceedings; civil action subsequent to arbitration; conduct of arbitration proceedings
>
> (1) *If no arbitration proceeding has been initiated* pursuant to subsection (a) of this section, *the amounts demanded* by the plan sponsor under section 1399(b)(1) of this title *shall be due and owing* on the schedule set forth by the plan sponsor. The plan

sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

29 U.S.C. § 1401(a), (b) (emphasis added).

As noted above, the Sixth Circuit has held that "arbitration reigns supreme" as the preferred resolution mechanism for disputes in the nature of those raised by the defendant in this case. *Mason and Dixon*, 852 F.2d at 164. Also, the demand for arbitration must be timely, since "there are also strict time limits imposed on an employer that wishes to arbitrate." *Central States v. Carstensen Freight Lines, Inc.*, 221 F.3d 1338, *2 (7th Cir. 2000) (Table). The Seventh Circuit has described these time limits as follows:

> After a plan issues its demand, an employer has 90 days to ask the plan sponsor to review the case, identify inaccuracies, and furnish additional information. 29 U.S.C. § 1399(b)(2)(A). "After a reasonable review," the plan is then required to notify the employer of its decision, its reasoning, and the basis for any change in the determination of liability. 29 U.S.C. § 1399(b)(2)(B). Once this happens, the arbitration clock begins to run. More specifically, the employer must seek arbitration within 60 days of its receipt of the plan's decision (under 29 U.S.C. § 1399(b)(2)(B)) or 180 days of the employer's request for review (under 29 U.S.C. § 1399(b)(2)(A)), whichever comes earlier. 29 U.S.C. § 1401(a)(1).

*Ibid.* And the statute specifically states that if arbitration is not initiated within these time periods, the amounts demanded by the plan sponsor shall be "due and owing," and a collection action may be brought in federal court. 29 U.S.C. § 1401(b)(1). The weight of appellate authority holds that an employer that fails to initiate arbitration in a timely manner waives defenses and objections that could have been raised in arbitration. *Board of Trustees Sheet Metal Workers' Nat'l Pension Fund v. BES Services, Inc.*, 469 F.3d 369, 376 (4th Cir. 2006); *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Kero Leasing Corp.*, 377 F.3d 288, 294 n.5 (3d Cir. 2004); *Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Exp., Inc.*, 181 F.3d 799, 805 (7th Cir. 1999); *see also Mason and Dixon*, 852 F.2d at 166 n.11.

The challenges that the defendant makes go to questions whether it was liable for withdrawal payments and if so the amount. They do not constitute a facial constitutional attack on the statute, a verifiable claim of irreparable injury, or a challenge to whether it is an "employer" within the meaning of ERISA section 4221(a), which are the exceptions to the arbitration requirement recognized by the Sixth Circuit. *Mason and Dixon*, 852 F.2d at 165. The failure to demand arbitration within the prescribed time, therefore, amounts to a waiver of these issues.

The parties dispute the starting date for the arbitration demand period. More accurately, they disagree over the date that triggered the informal review process that precedes arbitration, but that date ends up controlling the arbitration clock. The plaintiff says it is May 3, 2007, when the defendant received the first notice of assessment. The defendant asserts that the relevant date is July 2, 2007, when it received the revised notice of assessment. The Court believes the defendant has the better argument here. The plaintiff has cited no authority for the proposition that a revised notice does not restart the clock and the Court has found none. That is not surprising. It is sensible that the arbitration clock would start anew with the issuance of a revised notice, since changes in the notice that might include a new withdrawal liability assessment might moot the objections an employer originally had, or new objections might arise. And nothing in the statute commends the plaintiff's view. *See* 29 U.S.C. § 1401(a)(1). The Court concludes, therefore, that the relevant starting date under 29 U.S.C. § 1399(b)(1) is July 2, 2007.

The defendant had "90 days" from that date "to ask the plan sponsor to review the case, identify inaccuracies, and furnish additional information." *Carstensen*, 221 F.3d 1338, *2 (citing 29 U.S.C. § 1399(b)(2)(A)). The defendant in this case did so on July 20, 2007, well within the prescribed period. "After a reasonable review," the plan is then required to notify the employer of

its decision, its reasoning, and the basis for any change in the determination of liability. 29 U.S.C. § 1399(b)(2)(B). The plan trustees concede that they did not make such a determination, but they argue that they failed to issue a decision under section 1399(b)(2)(B) "because there was no request for review." Pl.'s Br. in Supp. of Mot. Summ. J. at 11 n.11. However, in light of attorney Steven Wright's July 20, 2007 letter, this assertion is untenable. Wright specifically objected to the assessment, stated that he wished to audit the fund's records supporting the determination, challenged "(1) the actuarial present value of vested benefit obligations, (2) the value of the plan's assets, (3) the value of the plan's vested but unfunded benefits, and (4) W.G. Heating's proportionate share of unfunded vested benefits," Def.'s Br. in Supp. of Ans. to Mot. Summ. J., Ex. B, Wright Letter, and requested additional information. It is difficult to see how that letter failed to qualify as a request to review matters "relating to the determination of the employer's liability." 29 U.S.C. § 1399(b)(2)(A)(i).

Because the plan trustees did not issue a decision or explain "the basis for the decision," 29 U.S.C. § 1399(b)(2)(B), the defendant had 180 days from the request for review to seek arbitration, 29 U.S.C. § 1401(a)(1), or until approximately December 20, 2007. Before the arbitration deadline expired, the plaintiff filed this case on December 11, 2007. The defendant argues, without citation, that this "cut off" its right to arbitrate withdrawal liability. Resp. Br. at 14.

Because the time for an arbitration demand had not expired, the withdrawal liability payments were not "due and owing" at the time the plaintiff filed its complaint. But the Court does not see how that premature filing prevented the defendant from demanding arbitration at any time through the December 20 deadline. Had it done so, the amounts demanded by the plaintiff would have become due and owing until the arbitration concluded. *See* 29 U.S.C. § 1401(b)(1). In this

case, however, the time to arbitrate clearly has passed. That is so even though the revised notice controls the deadlines.

Nor does the Court find that the plaintiff's jumping the gun affects the validity of the complaint or the Court's jurisdiction. The courts that have considered the question have concluded that "the arbitration provisions of the MPPAA do not constitute a bar to federal jurisdiction. Rather, the requirement of exhaustion of administrative remedies in this context is a prudential matter within our discretion." *T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, of Local 1730 Intern. Longshoremen's Ass'n*, 756 F.2d 939, 945 (2d Cir. 1985) (collecting cases).

There is no factual dispute that the arbitration deadline now has passed and the defendant employer did not demand arbitration of the issues relating to its withdrawal liability. The Court concludes, therefore, that the withdrawal liability assessed by the plaintiff is "due and owing" under 29 U.S.C. § 1401(b)(1). The defendant has waived any defenses and objections it could have raised in arbitration. Further, the plaintiff is entitled to interest and may be entitled to reasonable attorney's fees. *See* 29 U.S.C. §§ 1451(b), 1132(g)(2); Fed. R. Civ. P. 54(d)(2). The motion for summary judgment, therefore, will be granted.

## V.

The Court concludes that the counterclaim is subject to dismissal under Rule 12(b)(6), and the plaintiff is entitled to judgment in its favor as a matter of law on its principal complaint. However, the case is not finished because the defendant may proceed on its third-party complaint for indemnity.

Accordingly, it is **ORDERED** that the plaintiff's motion to dismiss the counterclaim [dkt # 8] is **GRANTED**.

It is further **ORDERED** that the plaintiff's motion to strike the third-party complaint [dkt # 9] is **DENIED**.

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt # 14] is **GRANTED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: May 14, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 14, 2008.

s/Felicia M. Moses
FELICIA M. MOSES
